UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

DENON TAYLOR,                              )
                                           )
                    Plaintiff,             )
                                           )
        v.                                 )        No. 2:19-cv-00416-JPH-MJD
                                           )
RICHARD BROWN, et al.                      )
                                           )
                    Defendants.            )

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

After the prison mailroom supervisor destroyed a letter that was returned to him, Denon Taylor sued her and the Warden for their role in creating or enforcing an allegedly unconstitutional policy. The defendants have moved for summary judgment. They argue that the destroyed mail, which Mr. Taylor had attempted to send to an offsite physician, was not "legal mail" entitled to heightened First Amendment protection. They also argue that they are entitled to qualified immunity on this claim. For the reasons discussed below, the motion for summary judgment is **GRANTED.**

**I. SUMMARY JUDGMENT STANDARD**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Com. Schools*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the

nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Community Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.,* 870 F.3d 562, 573-74 (7th Cir. 2017).

## II. BACKGROUND

### A. Legal Mail Policies

The Indiana Department of Correction ("IDOC") maintains a policy titled "Offender Correspondence." Dkt. 68-1. Under this policy, all incoming and outgoing "legal correspondence" must be opened and inspected in the presence of the sending or receiving prisoner. *Id.* at 8. Each correctional facility is required to develop its own operational procedures to ensure that legal mail is opened and inspected in the presence of the sending or receiving prisoner. *Id.* The definition of "legal correspondence" in IDOC's Offender Correspondence policy does not expressly address the status of returned, undelivered legal mail. *Id.* at 2.

Wabash Valley Correctional Facility has its own Offender Correspondence policy. Dkt. 68-2. This policy expressly addresses the issue of returned, undelivered legal mail and provides the following:

2

> The mail shall be inspected for contraband and prohibited property.
> (The inspection does not need to occur in front of the offender.) . . .
> If no contraband or prohibited property is found then the mail shall
> be destroyed and the offender shall receive a notice of destruction
> along with a photocopy of the returned envelope. A copy of the notice
> of destruction and the front of the returned envelope shall be sent
> to the Classification Department for placement in the offender's
> packet.

*Id.* at 7.

In 2019 and 2020, several prisoners at Wabash Valley Correctional Facility filed civil rights lawsuits to enjoin prison officials from continuing to enforce this provision.[1] As a result, the provision was vacated by IDOC Executive Directive #20-30 on June 16, 2020. Dkt. 68-5; *Sweeney*, 2:19-cv-285-JPH-MJD, dkt. 64-1 (settlement agreement). Executive Directive #20-30 provides, in relevant part:

> If a virtual inspection of the mail does not indicate anything unusual
> or suspicious (e.g. When the returned item is noted on facility logs
> of outgoing mail), the mail shall be treated as incoming Legal Mail
> or Privileged Correspondence, and opened in the presence of the
> offender only to check for contraband/prohibited property and, if no
> contraband/prohibited property is found, it shall be given to the
> offender.
>
> . . .
>
> In the event that suspicion is raised that the returned Legal Mail or
> Privileged Correspondence is tainted with a foreign substance or
> contains contraband/prohibited property, it shall be treated in the
> same manner as non-Legal Mail or Privileged or non-Privileged
> Correspondence which raised similar suspicion . . . If no foreign
> substance or other contraband /prohibited property is discovered,
> the mail shall be copied, and the copy provided to the offender.

Dkt. 68-5, p. 3, paras. 6-7.

---

[1] *E.g. Sweeney et al. v. Wallace et al.*, 2:19-cv-285-JPH-MJD; *Robinson v. Wallace et al.* 2:19-cv-560-JPH-DLP.

### B. Mr. Taylor's Destroyed Mail

On or around February 22, 2019, Mr. Taylor attempted to mail a letter from Wabash Valley Correctional Facility to Dr. Kurtis Madsen, an offsite physician based in Terre Haute, Indiana. Dkt. 70, p. 1, para. 2. On the envelope, Mr. Taylor misspelled Dr. Madsen's name as "Dr. Madison." *Id.*; dkt. 68-3, p. 2.

Mr. Taylor wanted to pursue legal remedies for injuries and medical treatments for his knee. Dkt. 68-4, p. 13. Mr. Taylor claims that Dr. Madsen is "the reason why [his] knee is messed up." *Id.* The letter intended for Dr. Madsen included an affidavit describing the issues with Mr. Taylor's knee, along with a witness statement from another prisoner about Mr. Taylor's condition. *Id.* at 14. Mr. Taylor believed that he needed Dr. Madsen to sign the affidavit before he could file a lawsuit in state or federal court. *Id.* at 18.

On March 5, 2019, the letter intended for Dr. Madsen was returned by the United States Postal Service, undelivered and marked "return to sender," to Wabash Valley. Dkt. 68-3; dkt. 70, p. 16. Pursuant to Wabash Valley's Correspondence Policy, Ms. Wallace confiscated the letter, inspected it for contraband, and had it destroyed. *Id.* Ms. Wallace sent Mr. Taylor a copy of the front of the envelope and a Notice and Report of Action Taken on Correspondence form, which stated that the letter had been destroyed. *Id.*

### C. Subsequent Events

In his deposition, Mr. Taylor testified that he has been unable to file a lawsuit against Dr. Madsen because his letter to Dr. Madsen was destroyed. Dkt. 68-4, p. 20. He did not make copies of the destroyed affidavit or the testimonial

4

statement from his fellow prisoner, and the prisoner who drafted the testimonial statement is now deceased. *Id.* at 27.

Mr. Taylor stated that he was discouraged by the destruction of his letter to Dr. Madsen and has not attempted to write another letter. *Id.* However, he also testified that the policy at Wabash Valley has changed, and prison officials now return legal mail marked "return to sender" to prisoners. *Id.* at 28.

### III. DISCUSSION

At issue in this case is a single piece of returned mail that was destroyed.

### A. Claims for Injunctive Relief are Moot

After Mr. Taylor filed this lawsuit, the provision of Wabash Valley's Offender Correspondence policy at issue was vacated by IDOC Executive Directive #20-30. Dkt. 68-5. In his deposition, Mr. Taylor testified that inmates now receive a photocopy of mail marked "return to sender," which complies with the terms of IDOC Executive Order #20-30. As such, the issue of injunctive and declaratory relief is now moot. *See Ovadal v. City of Madison, Wisconsin*, 469 F.3d 625, 629 (7th Cir. 2006) (holding that protester's claim seeking declaratory and injunctive relief from enforcement of city's unwritten traffic hazard policy was rendered moot by passage of city ordinance).

### B. Destruction of Mail Claims

Whether the destruction of the returned mail violated Mr. Taylor's clearly established constitutional rights depends in part on whether it was "legal mail" or non-legal mail.

### 1. Heightened Protection for Legal Mail

Prisoners have a First Amendment right both to send and receive mail. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999). An inmate's legal mail is entitled to heightened First Amendment protections because of the potential for interference with the right of access to the courts. *Id.* Thus, when prison officials receive a letter for a prisoner that is identifiable as legal mail, prison officials may violate the prisoner's constitutional rights if they open the letter outside of the prisoner's presence. *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005) (citing *Wolff v. McDonnell*, 418 U.S. 539, 576 (1974); *Castillo v. Cook County Mail Room Dep't*, 990 F.2d 304, 305-06 (7th Cir. 1993)).

In *Guajardo-Palma v. Martinson*, 622 F.3d 801 (7th Cir. 2010), the Seventh Circuit addressed the question of what types of mail are entitled to the heightened protections of "legal mail." The court reasoned that the question comes down to whether the restriction on mail access creates an "obstacle to access to the court." *Id.* Correspondence to or from a prisoner's attorney falls squarely within this category because allowing prison officials, who are often defendants in prisoner litigation, "to eavesdrop on [the prisoner's] communications with the lawyer would undermine the prisoner's right to be represented, at a hearing, by counsel." *Id.* at 803; *see also Bach v. People of State of Ill.*, 504 F.2d 1100, 1102 (7th Cir. 1974) ("[C]ontact with an attorney and the opportunity to communicate privately is a vital ingredient to the effective assistance of counsel and access to the courts."). Such a practice may be unlawful as applied to prisoners pursuing civil remedies and would present

additional, Sixth Amendment issues for prisoners pursing relief in criminal proceedings. *Id.* at 806.

*Guajardo-Palma* considered other categories of mail as well. Public documents, such as those issued by a court and mailed to a prisoner, do not have the same protections as correspondence with an attorney. *Id.* at 805. There is no danger that allowing prison officials to read public court orders will give the defendants "an edge in litigation." *Id.* at 806. Thus, there is no harm in opening the mail outside the prisoner's presence. *Id.*

Non-public communications with non-lawyers require a more fact-sensitive analysis. *Id.* However, "as long as the prison confines itself to opening letters that either are public or if private still are not of a nature that would give the reader insights into the prisoner's legal strategy, the practice is harmless and may be justified by the volume of such mail that a litigious prisoner can generate." *Id.*

*Guajardo-Palma* also explained that a prison's "active interference" with a prisoner's ability to pursue *pro se* legal proceedings, such as by depriving the prisoner of resources necessary to pursue legal claims, may also violate the prisoner's right of access to the courts. *Id.*

### 2. The Letter to Dr. Madsen was not "Legal Mail"

The amended complaint describes two separate but related actions by prison officials. First, Ms. Wallace opened the letter intended for Dr. Madsen outside of Mr. Taylor's presence. Dkt. 29, p. 3. Second, Ms. Wallace destroyed

this letter without providing a copy to Mr. Taylor. *Id.* at 4-5. This was done pursuant to Wabash Valley's Offender Correspondence policy. *Id.* at 6.

The defendants do not contest any of these allegations in their motion for summary judgment. *See* dkt. 67, pp. 3-6. Instead, they argue that the policy was lawful as applied to Mr. Taylor because his letter to Dr. Madsen was not "legal mail" entitled to heightened First Amendment protections. *Id.* at 10-11.

The letter was non-public mail to a non-lawyer. The question, then, is whether opening the letter outside Mr. Taylor's presence could have negatively affected his ability to pursue legal proceedings by providing prison officials with insights into his "legal strategy." *Id.*

Mr. Taylor testified in his deposition that he intended to sue Dr. Madsen for "mess[ing] up" his knee. *See* dkt. 68-4, p. 13. Although the letter may have provided some insight into Mr. Taylor's legal strategy, the fact that he intended to send this letter *to the potential defendant* belies a finding of prejudice. Mr. Taylor meant to have his letter read by the opposing party, so the possibility that a non-party prison official may have also read the letter would not have given Dr. Madsen "an edge in litigation." *Guajardo-Palma*, 622 F.3d at 806.

The Court also agrees that the evidence fails to create a reasonable inference that the destruction of this letter impeded Mr. Taylor's access to courts. To show that prison officials interfered with a prisoner's access to courts, the prisoner "must identify an underlying non-frivolous legal claim that the prison officials' actions impeded." *Delgado v. Godinez*, 683 F. App'x 528, 529 (7th Cir.

2017) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 351-53 (1996)).

Although Mr. Taylor's statement that he intended to pursue a claim against Dr. Madsen for "mess[ing] up" his knee, dkt. 68-4, p. 13, suggests a claim for medical malpractice or deliberate indifference to a serious medical need, the record does not suggest that these claims had any potential merit. *Cf. Delgado*, 683 F. App'x at 829 (affirming dismissal of prisoner's access to court claim at screening because the prisoner did not establish interference with a non-frivolous claim: "Delgado has hinted that he and counsel were working on a postconviction petition, but he has never identified the matter or suggested that the two incidents frustrated his ability to pursue it.").

Furthermore, there is no evidence that the destruction of the affidavit inside the letter prohibited Mr. Taylor from pursuing legal action against Dr. Madsen. Neither the Federal Rules of Civil Procedure nor the Indiana Trial Rules require a plaintiff to provide a signed affidavit from the defendant in order to initiate a lawsuit. *See* Fed. R. Civ. P. 3; Fed. R. Civ. P. 8(a); Ind. Trial R. 3; Ind. Trial R. 8. Although Mr. Taylor testified that he needed to pursue an insurance claim before pursuing a civil action, *see* dkt. 68-4, pp. 16-17, the evidence does not support a finding that he needed to obtain an affidavit from Dr. Madsen to do so. Mr. Taylor's belief on this point came from information he received from his fellow prisoners, rather than from an attorney or a legal authority. *Id.* at 19.

Mr. Taylor's letter to Dr. Madsen also contained a testimonial statement from a fellow prisoner who witnessed the issues Mr. Taylor was having with his injured knee. This inmate is now deceased, and there is no way for Mr. Taylor to reproduce the testimonial statement. However, Mr. Taylor has not provided sufficient details of what the testimonial statement contained, and the record does not support a reasonable conclusion that the prisoner's hearsay statement could have been entered into evidence or otherwise benefited Mr. Taylor in a legal proceeding.

For these reasons, the evidence does not support a reasonable conclusion that the letter intended for Dr. Madsen was "legal mail" or that the destruction of the letter impeded Mr. Taylor's access to courts.

### C. Qualified Immunity

The defendants argue that they are entitled to qualified immunity on Mr. Taylor's destruction of non-legal returned mail claim.

Qualified immunity protects government officials from damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known" at the time that the conduct occurred. *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2017) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "In considering whether qualified immunity applies, [the district court] must inquire: '(1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendant violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation.'" *Isby v. Brown*,

10

856 F.3d 508, 529 (7th Cir. 2017) (quoting *Hernandez v. Cook Cty. Sheriff's Office*, 634 F.3d 906, 914 (7th Cir. 2011)). To be "clearly established," a constitutional right "must have a sufficiently clear foundation in then-existing precedent." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). The principle of fair notice pervades the qualified immunity doctrine. *Campbell*, 936 F.3d at 545. Qualified immunity applies unless the specific contours of the right "were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

Given this emphasis on notice, clearly established law cannot be framed at a "high level of generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). "A rule is too general if the unlawfulness of the officer's conduct 'does not follow immediately from the conclusion that [the rule] was firmly established.'" *Wesby*, 138 S. Ct. at 590 (quoting *Anderson v. Creighton*, 483 U.S. 635, 641, (1987)). Existing caselaw must "dictate the resolution of the parties' dispute," *Comsys, Inc. v. Pacetti*, 893 F.3d 468, 472 (7th Cir. 2018).

To determine whether a right is clearly established, district courts are to look first to controlling Supreme Court precedent and then to Seventh Circuit decisions on the issue. *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). While "a case directly on point" is not required, "precedent must have placed the . . . constitutional question beyond debate," *White v. Pauly*, 137 S. Ct. 548, 551, (2017) (quotation marks omitted). Put slightly differently, a right is clearly established only if "every reasonable official would have understood that what he

11

is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015). "The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Campbell*, 936 F.3d at 546 (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (quotation marks omitted)).

"Qualified immunity is an affirmative defense, but once it is raised the burden shifts to the plaintiff to defeat it." *Holleman v. Zatecky*, 951 F.3d 873, 877 (7th Cir. 2020).

The constitutional right at issue here is prisoners' First Amendment right to send and receive non-legal mail. *Rowe*, 196 F.3d at 782. Restrictions on sending and receiving non-legal mail are permissible only "if the restriction is related to legitimate penological interests" *Williams v. Mierzejewski*, 401 F. App'x 142, 144 (7th Cir. 2010) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The defendant has the burden of offering a legitimate governmental interest put forth to justify the restriction. *Turner v. Safley*, 482 U.S. 78 (1987); *see Singer v. Raemisch*, 593 F.3d 529, 536-37 (7th Cir. 2010) ("[T]he burden shift[s] to the prisoner once the prison officials provide the court with a plausible explanation."). The defendants have not designated any evidence to explain their concerns about incoming mail marked "return to sender."

The defendants argue, however, that the First Amendment's right to send and receive non-legal mail is not directly implicated because the mail at issue was returned. The defendants explain:

12

> This case is novel because: it involves a "return to sender" letter of Plaintiff's own creation, it involves a letter that was not addressed to an attorney or legal agency, and, by Plaintiff's own admission, the contents of this letter were not connected to any pending or future litigation.

Dkt. 67, p. 9. In addition, there is no evidence that the defendants hindered Mr. Taylor's ability to send or receive legal mail, that Mr. Taylor had any issue initially mailing the contested letter, or that the Defendants destroyed a letter addressed to Mr. Taylor from an outside party. The undisputed facts show that the defendants destroyed a letter of Mr. Taylor's own creation after it was returned to the facility. Dkt. 73-1 at p. 3. The defendants also argue that, "[a]t the time this policy was enacted, the boundary of these 'limitations' was not clear and certainly not so with respect to 'return to sender' mail from non-legal sources." Dkt. 67 at 10.

While it is well-established that prisoners have a right to send and receive mail, and that regulations or practices affecting a prisoner's receipt of non-legal mail "must be reasonably related to legitimate penological interests," *Rowe*, 196 F.3d at 782, the mail that was destroyed in this case did not impact Mr. Taylor's right to send or receive mail. The mail that was destroyed was mail that he sent but was undeliverable for reasons outside the prison's control.

In response to this argument, Mr. Taylor points to an unpublished District of Colorado opinion, which addressed a similar policy. *Ybanez v. Milyard*, No. 10-CV-02234-WYD-CBS, 2011 WL 4383123, at *3 (D. Colo. Sept. 20, 2011) (The rule provides that any outgoing mail returned as undeliverable for any reason ('return to sender' mail) is to be destroyed rather than returned to the inmate

13

who sent it.). In *Ybanez,* the district court rejected defendants' argument that "because 'return to sender' mail does not directly involve communication with others, it does not implicate an inmate's First Amendment rights." *Id.* at *7. The district court found that "the policy may violate Ybanez's constitutional rights to send and receive mail" explaining:

> As Ybanez notes, when an inmate's mail is returned for improper address or postage, that inmate is likely to simply make the appropriate adjustments and resend the mail. When the mail is destroyed before the inmate has an opportunity to make these adjustments, that correspondence may not be reproducible (for example, the letter may include a picture, a poem, or a description of events that may be too far removed for the inmate to recount the details with the same level of clarity once he learns that his original letter was returned and destroyed). Thus, the inmate's ability to communicate with the outside world may very well be impaired by the policy.

*Id.* The district court went on to conclude that the defendants were not entitled to qualified immunity because "an inmate's right to send and receive mail has been clearly established since the Supreme Court decided *Thornburgh* in 1989." *Id.* at 8 (citing *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989)).

But district court decisions like *Ybanez* "have no weight as precedents and therefore cannot *clearly* establish a constitutional right."  *Boyd v. Owen*, 481 F.3d 520, 527 (7th Cir. 2007).  And *Thornburgh* did not address facts like the ones in this case. There*,* the Supreme Court explained that "publishers who wish to communicate with those who, through subscription, willingly seek their point of view have a legitimate First Amendment interest in access to prisoners." *Thornburgh*, 490 U.S. at 408. The Court further held that the standard of review that applies to prison regulations limiting publishers' access is governed by

14

*Turner. Id.* (citing *Turner,* 482 U.S. at 89). The district court in *Ybanez* used *Thornburgh* to define the constitutional right as "an inmate's right to send and receive mail." But *Thornburgh* was not so broad, and after *Ybanez* was decided the Supreme Court explained:

> "We have repeatedly told courts … not to define clearly established law at a high level of generality." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). The dispositive question is "whether the violative nature of *particular* conduct is clearly established." *Ibid.* (emphasis added). This inquiry "'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Brosseau v. Haugen*, 543 U.S. 194, 198, (2004) (per curiam) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, (2001)).

*Mullenix v. Luna*, 136 S.Ct. 305 (2015). Given the facts in this case, this Court cannot say that only someone "plainly incompetent" or who "knowingly violate[s] the law" would have perceived that destroying Mr. Taylor's returned mail violated his First Amendment rights to send or receive mail.

In the absence of controlling precedent that addresses the destruction of mail that has been returned to a prisoner and marked "return to sender," the defendants are entitled to qualified immunity. At the time the returned mail was destroyed, not "every reasonable official would have understood" that the returned mail was entitled to protection under the First Amendment. *See Littler v. Wallace*, 803 F. App'x 15 (7th Cir. 2020) (holding that Ms. Wallace was entitled qualified immunity for seizing and destroying a prisoner's outgoing legal mail intended for a former inmate based on facility's policy of prohibiting correspondence between current and former inmates. *Id.* at 17-18).

In reaching this conclusion, the court has narrowly considered how the application of the prison rule resulting in the destruction of a piece of returned mail affected Mr. Taylor's clearly established constitutional rights. The destruction-of-returned-mail policy is no longer in effect. Thus, no conclusions about the lawfulness of the regulation in general are necessary. *See Miller v. Downey*, 915 F.3d 460, 463-64 (7th Cir. 2019) (holding that the district court "painted with too broad a brush" when it analyzed, "not the narrow question of whether Miller had a right to receive a legal publication, but instead the broader question of whether the jail's ban on all newspapers offended the First Amendment") (citing *ISI Int'l v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) (emphasizing that "federal courts are supposed to do what they can to avoid making constitutional decisions, and strive doubly to avoid making unnecessary constitutional decisions")). Accordingly, summary judgment on this ground is **GRANTED**.

### D. Sharing Legal Documents

At the time this civil action was filed, Mr. Taylor was also suing Warden Brown for a implementing a policy at Wabash Valley that prevents prisoners from possessing each other's legal documents. Dkt. 41, p. 2. During his deposition, however, Mr. Taylor stated that he was no longer interested in pursuing this claim and was solely focused on his destruction of mail claims. Dkt. 68-4, pp. 28-29. The defendants have moved for summary judgment on this issue, arguing that Mr. Taylor has "voluntarily dismiss[ed]" this claim with their consent. Dkt. 67, pp. 11-2. They also argue that Mr. Taylor's claims are without merit. *Id.*

(citing *Turner*, 482 U.s. at 89-91; *Shaw v. Murphy*, 532 U.S. 223, 231 (2001); *Perotti v. Quinones*, 448 F. App'x 141, 146 (7th Cir. 2012)).

Consistent with his deposition testimony that he does not intend to pursue this claim, Mr. Taylor has not responded to the motion for summary judgment on this ground. He therefore has "abandoned the claim," *Maclin v. SBC Ameritech*, 520 F.3d 781, 788 (7th Cir. 2008), and the motion for summary judgment on this claim is **granted**.

## IV. CONCLUSION

The motion for summary judgment, dkt. [66], is **GRANTED.**

Final Judgment consistent with this Order shall now issue.

**SO ORDERED**.

Date: 3/28/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

DENON TAYLOR
945835
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Benjamin Charles Wade
INDIANA ATTORNEY GENERAL
ben.wade@atg.in.gov